1  **DOUGLAS A. LINDE, ESQ. (SBN 217584)(dal@lindelaw.net)**
   **ERICA ALLEN, ESQ. (SBN 234922)(ela@lindelaw.net)**
2  **AREN KAVCIOGLU, ESQ. (SBN 221992 (ak@lindelaw.net)**
   **THE LINDE LAW FIRM**
3  **9000 Sunset Boulevard, Ste. 1025**
   **Los Angeles, California 90069**
4  **(310) 203-9333; (310) 203-9233 FAX**

5  Attorneys for Plaintiffs,
6  GLEN E. FRIEDMAN

7

8                       UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11 | GLEN E. FRIEDMAN,              ) Case No. CV10-0014 DDP (JCx)
12 |                                ) Honorable Dean D. Pregerson
   |         Plaintiffs,            )
13 |                                ) **NOTICE OF MOTION AND JOINT**
14 |     v.                         ) **STIPULATION RE: PLAINTIFF'S**
   |                                ) **MOTION TO COMPEL**
15 | THIERRY GUETTA a/k/a MR.       ) **PRODUCTION ON REQUEST FOR**
16 | BRAINWASH; and DOES 1 though   ) **PRODUCTION NO. 34**
   | 10, inclusive,                 )
17 |                                ) **[DISCOVERY MATTER – LR 37-1]**
18 |         Defendants.            )
   |                                ) Date: February 8, 2011
19 |                                ) Time: 9:30 a.m.
20 | _____  ) Courtroom: 20, 3rd Floor

21

22 **TO THE HONORABLE COURT:**
23
   **PLEASE TAKE NOTICE** that on February 8, 2011 at 9:30 a.m. or as soon
24
   thereafter as the matter may be heard in the above mentioned Court, located in
25
   Courtroom 20, 3rd Floor, at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiff
26
   Glen E. Friedman ("Plaintiff") will move this Court for an Order Compelling Defendant
27
   Thierry Guetta a/k/a MR. BRAINWASH ("Defendant") to produce all items responsive
28

1
Notice of Motion and Joint Stipulation on Motion to Compel re RFP No. 34

to Request No. 34 in Plaintiff Glen E. Friedman's Request for Production of Documents, ("RFP") Set Three.

      Pursuant to Local Rule of Court 37-1, Plaintiff makes this Motion after a meeting and conferring with Defendant on December 30, 2010, in person. This Motion is based on this Notice of Motion and Joint Stipulation, all pleading and papers on file in this action and upon such other evidence and argument as may be presented to the Court at the time of hearing.

      Attached hereto as Exhibit A is a copy of the Scheduling Order in this case.

Dated: January 3, 2011           THE LINDE LAW FIRM

                                     By:_/s/ Erica L. Allen_____
                                        Douglas A. Linde
                                        Erica L. Allen
                                        Aren Kavcioglu
                                  Attorneys for Plaintiff
                                  GLEN E. FRIEDMAN

## I. INTRODUCTION

### A. PLAINTIFF'S INTRODUCTORY STATEMENT

In 1984, Plaintiff took the following photograph of RUN DMC (hereinafter "Plaintiff's Copyrighted Image"), a copy of which is attached as Exhibit 1 to the set of RFPs at issue on this Motion. Exhibit B, p. 7.



Plaintiff's photograph was published by Plaintiff in his book, entitled F*** YOU HEROES: Burning Flags Press (September 1994), ISBN-10: 0964191601, ISBN-13: 978-0964191600, for which Plaintiff applied for and received a copyright registration VA 1-221-001 ("Plaintiff's Copyright").

Plaintiff discovered that Defendant infringed on Plaintiff's Copyright by copying original elements of Plaintiff's Copyrighted Image, into the following images, and distributing/displaying said images without the consent of Plaintiff:

**Defendant's First Image (attached as Exhibit 2 to RFP)**



**Defendant's Second Image (Exhibit 3 to RFP)**



**Defendant's Second Image (Exhibit 4 to RFP)**



**Defendant's Third Image (attached as Exhibit 5 to RFP)**



Plaintiff thus filed the instant action against Defendant for Copyright Infringement.

Plaintiff took the deposition of Defendant on November 15, 2010. During the deposition, Plaintiff testified that he held an art show in Los Angeles where he exhibited the subject images identified above. Exhibit E, pp. 126, 128, 135, 154, 156; Exhibits F and G.

Defendant also advertised for the art show by sending out postcards with Defendant's First and Second images identified above, in order to draw consumers and potential consumers to his show. Exhibit E, p. 163 and Exhibit H.

During the deposition, Defendant expressly agreed to provide Plaintiff with information regarding how much he made from the art show. Exhibit E, p. 159, p. 19-22. Moreover, under clear Ninth Circuit authority, because Defendant used the subject images to advertise for the art show, and displayed works depicting the images at the art show, Plaintiff is entitled to make a claim for indirect profits for all profits earned by Defendant as a result of the show. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, (Frank Music I), 772 F. 2d 505, 517 (9th Cir. 1985), and *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, (Frank Music II), 886 F. 2d 1545, 1548 n.2 (9th Cir. 1989).

Accordingly, on November 19, 2010, Plaintiff propounded RFP, Set Three, to Defendant. Exhibit B. Request No. 34 asked Defendant to produce all documents reflecting sales he made at his art show in Los Angeles.

Despite Defendant's agreement at the deposition to provide the information, and the clear state of the law, Defendant objected to Request No. 34 and refused to produce documents based on the objections.

Plaintiff's counsel, Douglas A. Linde, sent an email to Defendant's counsel requesting a Rule 37 conference regarding Defendant's response to Request No. 34. Exhibit D. Counsel for the parties met on December 30, 2010. After conducting a Rule 37 conference, Defendant maintained its refusal to produce the documents responsive to Request No. 34. Accordingly, Plaintiff was forced to file the instant Motion.

The sales records from Defendant's art show are directly relevant to Plaintiff's claim for indirect profits. For reasons detailed below, Defendant's objections to Request No. 34 lack merit. Accordingly, the Court should overrule the objections and order Defendant to produce all of the responsive sales records.

B. **DEFENDANT'S INTRODUCTORY STATEMENT**

Plaintiff seeks discovery of every single sale Defendant made at his "Life is Beautiful" art show, which featured hundreds of works of art, based on Plaintiff's allegations of copyright infringement of his photograph of the rap group Run DMC. Plaintiff contends he is entitled to evidence of the show's "indirect profits," because a supposedly infringing image was used on a postcard to promote the show. However, Defendant testified that the postcards were not used for promotion of the show, but were instead given as a keepsake to people after they attended the show. Juenger ., ¶ 2, Ex. A, 168:10-24, 171:16-172:12. Plaintiff's extremely selective use of Defendant's deposition transcript for propositions to the contrary is deceptive at best. Indeed, Plaintiff's statements that "Defendant admitted that he used the subject Run DMC image to send out postcards to advertise for the show" and that "Defendant also advertised for the art show by sending out postcards ... in order to draw consumers and potential consumers to his show" are entirely baseless. Accordingly, Plaintiff has not demonstrated that Defendant used any allegedly infringing image to promote his art show. Additionally, Defendant testified that 30 to 60 other postcards using his artwork that did not incorporate the subject photograph were also created. Juenger Decl., ¶ 2; Ex. A, 168:18-21, 169:18-170:14.

Moreover, awards of indirect profits are rare. Associated Residential Design, LLC v. Molotky, 226 F.Supp.2d 1251, 1255 (2002) quoting 17 U.S.C. § 504(b) and citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.03[A] (2002) (which states that "notwithstanding [the few examples where indirect profit cases have been successful], claims for indirect profits are more frequently unsuccessful"). Plaintiff's reliance on the two Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc. cases is misplaced. In those cases, a portion of a Las Vegas hotel and casino's show was found to be infringing and the court allowed evidence of indirect

profits (of gambling revenues, hotel sales, etc.), because the show itself was deemed to be a promotional tool for the casino intended "to draw people to the hotel and gaming table." See Frank I, 772 F.2d 505, 517 (9th Cir 1985).[1] The Court held that the plaintiff was only entitled to indirect profits that were "ascertainable." Id. The Ninth Circuit provided some analysis of the holding in Frank I in Mackie v. Rieser, 296 F.3d 909 (9th Cir. 2002). There, the Court held that "a copyright holder must establish the existence of a *causal link* before indirect profits damages can be recovered." Id. at 914, emphasis added. In Mackie, the Court held that the plaintiff artist was not entitled to indirect profits the defendant symphony orchestra supposedly received as a result of using an admittedly infringing image in promotional materials. Similarly, the Court in Polar Bear Productions v. Timex Corporation, 384 F.3d 700, 711-712 (9th Cir. 2004) reversed a District Court award of indirect profits based on enhanced brand value from the infringing conduct, holding that the plaintiff's claim to indirect damages to be too speculative to establish the requisite causal connection.

      Here, Plaintiff has not made the threshold showing that Defendant used the supposedly infringing image to promote the art show. Defendant testified that the postcard was one of many different kinds that was given out as a memento, rather than used for promotional purposes. Moreover, Plaintiff has not and cannot establish any causal nexus between the supposed copyright infringement and the sale of any items at Defendant's art show that do not incorporate the subject photograph. Unlike the circumstances in the Frank cases, Defendant did not offer any ancillary goods or services at the art show, such as gambling. The only profits Defendant earned at his show were through the sale of his art. Defendant has already produced documents

---

[1] The courted noted that "MGM's 1976 annual report states that '[t]he hotel and gaming operations of the MGM Grand-Las Vegas continue to be materially enhanced by the popularity of the hotel's entertainment[, including] 'Hallelujah Hollywood', the spectacularly successful production revue....' " Frank I, 772 F.2d at 517.

responsive to requests for documents relating to sales of any art works incorporating the subject photograph. That any person purchased a work of art that did not incorporate Plaintiff's photograph of Run DMC because of the promotion of the art show using an allegedly infringing image would be rank speculation at best and is insufficient to establish a basis for discovering the broad category of discovery requested.

Additionally, Defendant did not, as Plaintiff suggests, expressly agree to provide information regarding his profits from the art show. Rather, Defendant simply explained that the art show was not only motivated by profit and in an off-the-cuff manner stated that his profits were not that great if one were to also examine the show's costs. Juenger Decl., ¶, Ex. A 159:4-22. Defendant certainly did not state that he would provide Plaintiff with the sales documents sought by the request at issue.

In sum, the profits are attributable to the supposedly infringing images is readily ascertainable: it is the amount of the sales of items bearing those supposedly infringing images minus any costs Defendant incurred in creating those works. Plaintiff has not demonstrated that Defendant promoted the art show through the use of any allegedly infringing images and has not established any causal link between such promotion and the sale of any items not incorporating the subject photograph. Therefore, Plaintiff's Motion to Compel must be denied.

## II. DEFINITIONS

"**DOCUMENT**" includes, but is not limited to, writings, drawings, graphs, charts, photographs, phone records, and other data compilations from which information may be obtained. This includes originals and all copies, unless identical, regardless of origin or location, or written, recorded and graphic matter, however produced or reproduced, formal or informal, whether for internal or external use, including, but not limited to: correspondence, e-mails, letters, memoranda, notes,

reports, contracts, agreements, directives, instructions, court papers, lists of persons or things, blueprints, sketches, graphic representations, maps, books, pamphlets, canceled checks, mechanical and electrical sound recordings, charts, catalogs, tapes, indices, data sheets, statistical tables and diagrams.

"**YOU**" and "**YOUR**"  shall mean and refer to the Responding Party,  its employees, agents, officers, directors, servants, representatives, companies, including subsidiaries, as well as anyone acting on its behalf or at its request.  Defendant cannot refuse to respond to interrogatories because the information requested is only in the possession of a subsidiary.  In re ATM Fee Antitrust Litigation, 233 F.R.D. 542, 545 (N.D. CA 2005)("federal law requires that a parent respond to an interrogatory under FRCP Rule 33 with information from a subsidiary if it has access to that information and if the information is relevant and not privileged. ").  See also Uniden Am. Corp v. Ericsson, Inc., 181 F.R.D. 302, 306 (M.D.N.C. 1998)(Defendant had control and therefore required to produce documents in the possession of its sister company).

## III.   REQUEST FOR PRODUCTION NO. 34

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS that refer in whole or in part to any and all sales made at YOUR "Mr. Brainwash presents Life Is Beautiful" exhibit, held in 2008 at 6121 N. Sunset Blvd., Los Angeles, CA 90028.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Objection.  The request is overbroad, vague, ambiguous, and seeks information that is not relevant to the instant action and not reasonably calculated to lead to the discovery of admissible evidence.  Additionally, the request seeks information protected from disclosure by the Constitutional right to privacy, the attorney-client privilege and

attorney work product doctrine. Based on the foregoing objections, no documents will be produced.

**PLAINTIFF'S CONTENTIONS AND PROPOSED RESOLUTION REGARDING REQUEST FOR PRODUCTION NO. 34:**

Defendant testified that he had a show in Los Angeles where he displayed the images at issue in this case. Defendant's Deposition, Exhibit E, pp. 126:16-19, 128:12-22, 129:3-6, 154:5-10, and 156:12-17; Exhibits F and G.

Request No. 34 asks Defendant to produce documents relating sales made at the show in Los Angeles.

Defendant refused to produce the responsive documents. Instead, Defendant alleged objections that lack merit.

**A. The Request Seeks Relevant Documents And Is Not Overbroad**

The Request seeks documents directly relevant to the issue of damages in this case.

In addition to direct profits, a plaintiff in a copyright case is entitled to recover indirect profits earned as a result of the use of copyrighted materials to promote an event. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, (Frank Music I), 772 F. 2d 505, 517 (9th Cir. 1985), and *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, (Frank Music II), 886 F. 2d 1545, 1548 n.2 (9th Cir. 1989).

Here, it cannot be undisputed that Defendant used Plaintiff's Copyrighted Image to promote the art show. Defendant admitted that he used the subject Run DMC image to send out postcards to advertise for the show. Exhibit E, p. 163:12-14. A copy of the postcard produced by Defendant is attached as Exhibit H. Defendant further admitted that he displayed the subject Run DMC images at the show. Accordingly, Plaintiff is entitled to make a claim for all profits earned by Defendant at the show.

### B. The Request Is Not Vague Or Ambiguous

Defendant's vague and ambiguous objections are without merit. It is well established that a party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized [therein]." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D.Kan. 1999).

To the extent that Defendant believes a word or phrase is vague, good faith requires that it specify the word or phrase it perceives as ambiguous. Indeed, where the purported ambiguity can easily be resolved by conferring with the propounding party, Courts are likely to overrule objections that the discovery is vague and ambiguous. *Beach v. City of Olathe, Kans.*, 203 FRD 489, 497 (D KS 2001).

Similarly, the Civility and Professionalism Guidelines of The United States District Court Central District of California, Section I.B.5.b, provides an attorney will "not strain to interpret the request in an artificially restrictive manner to avoid disclosure of relevant and non-privileged documents."

Here, Defendant has not isolated - either in its objection or during the Rule 37 conference- any specific language it contends is vague or ambiguous. Accordingly, the only conclusion that may be drawn is that the objection is asserted in bad faith.

Moreover, there is nothing unclear about the Request. The Request seeks documents relating to sales made by Defendant during the show. The documents include, but are not limited to, invoices, receipts, bills, summaries, ledgers, etc.

### C. Defendant's Privilege Objection Lacks Merit

Defendant's privilege objection lacks merit. Documents reflecting Defendant's sales at the show are not privileged by any means.

Moreover, Defendant's objections are unsupported by a log of any kind. Pursuant to FRCP 26(b)(5):

> "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

Accordingly, to the extent Defendant is withholding documents based on a claim of privilege, Plaintiff respectfully requests production of a privilege log stating (a) the specific privilege claims, (b) the general nature of the document, (c) the identity, employer and job title of its author, (d) the identity, employer and job title of each recipient, (e) the date on which it was written, and (f) the document's present location. to support these assertions of privilege. See Form Privilege Log, Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL, Form 11:A at p. 11-309 (The Rutter Group 2007); see also *Burlington Northern & Santa Fe Ry., v. United States District Court*, 408 F.3d 1142, 1148 (9th Cir. 2005).

### D. Defendant's Privacy Objection Lacks Merit

Defendant's privacy obejctions lacks merit for two reasosn.

First, the privacy objection should be overruled because Plaintiff's need for teh information to prove damages in this action overrides Defendant's purported privacy concerns. "Resolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted. The privacy objection also "must be evaluated against the backdrop of the strong public interest in uncovering civil

rights violations. . . ." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (internal citations and quotations omitted). Here, Planitiff clearly needs the information to establishes. Accordingly, the privacy objection should be overruled.

Second, to the extent Defendant truly has a privacy concern, an entry of a protective order is sufficient to alleviate such concerns. *Beal v. Marsh & McLennan Cos. Pers. Accident Ins. Plan*, 2010 U.S. Dist. LEXIS 135864 (C.D. Cal. Dec. 3, 2010) ("to the extent Defendant raises privacy objections to the discovery requests in issue, such objections are overruled in light of the protective order issued below.")

## DEFENDANT'S CONTENTIONS AND PROPOSED RESOLUTION REGARDING REQUEST FOR PRODUCTION NO. 34:

### A. Plaintiff Did Not Offer Any Proposed Resolution and Rejected the Proposal Defendant Offered

Obviously, a party must prove copyright infringement before that party is entitled to "indirect profits" relating to copyright infringement. Damages and profit information is discoverable through an accounting following a determination of copyright liability. See Respect Incorporated v. Committee On The Status of Women, 821 F.Supp. 531 (N.D. Ill 1993). Accordingly, Defendant proposed to produce responsive documents following a determination of liability in this action in response to what Defendant reasonably perceived to be at best a premature request for sensitive information pertaining to Defendant's sales of artwork that has no relevancy in this action. Juenger Decl., ¶ 3. Plaintiff rejected this proposal and did not offer any proposal of his own. Jueger Decl., ¶ 4.

### B.     The Request Seeks Irrelevant and Private Information

A party's right to discovery is limited to information relevant to the claims and defenses at issue in the action. As explained by the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495, 507-508 (1947), discovery "has ultimate and necessary boundaries," including limitations that "come into existence when the inquiry touches upon the irrelevant ..." "While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.' " In re Fontaine, 402 F.Supp. 1219, 1221 (E.D.N.Y.1975) quoting Broadway & Ninety-Sixth St. Realty Co. v. Loew's Inc., 21 F.R.D. 347, 352 (S.D.N.Y.1958).

Federal courts recognize the right to privacy as a limitation on the scope of discovery. Johnson by Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir. 1992); DeMasi v. Weiss, 669 F.2d 114, 119–120 (3rd Cir. 1982). Federal courts generally treat financial information as private. See Sheets v. Salt Lake County, 45 F.3d 1383, 1388 (10th Cir. 1995); Doe v. City of New York, 15 F.3d 264, 267 (2nd Cir.1994); Denius v. Dunlap, 209 F.3d 944, 957-958 (7th Cir. 2000); Bradley Trust v. Zenith Capital LLC, 2006 U.S. Dist. LEXIS 21671, *6 (N.D. Cal. 2006). "Resolution of a privacy objection ... requires a balancing of the need for the information sought against the privacy right asserted." Keith H. v. Long Beach Unified School Dist., 228 F.R.D. 652, 657 (C.D. Cal 2005).

Here, the request seeks documents pertaining to "any and all sales" that occurred at Defendant's art show. The request seeks information of sales documents that are not relevant to this action and Defendant has already produced the relevant sales records, *to wit*, documents pertaining to the sales of any artworks incorporating Plaintiff's photograph. In addition to being irrelevant, the documents contain private financial

information. The only justification Plaintiff offers for discovery of documents pertaining to sales of artworks that do not incorporate the subject photograph is that Plaintiff is entitled to evidence of "indirect profits."

### C. Plaintiff's "Indirect Profits" Argument is Unavailing

"Although indirect profits may be recovered by a copyright holder, those claims are frequently unsuccessful because profits must be 'attributable to the infringement.'" Associated Residential Design, LLC v. Molotky, 226 F.Supp.2d 1251, 1255 (2002) quoting 17 U.S.C. § 504(b) and citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.03[A] (2002) (which states that "notwithstanding [the few examples where indirect profit cases have been successful], claims for indirect profits are more frequently unsuccessful"). See also Mackie, *supra*, 296 F.3d at 913 (awards of indirect profits awards "are relatively rare"). A party seeking indirect profits must establish a causal link between those indirect profits and the copyright infringement. Id. at 914. A claim for indirect profits is properly denied where the claim to indirect profits is too speculative. Polar Bear Productions v. Timex Corporation, 384 F.3d 700, 711-712 (9th Cir. 2004).

Here, Plaintiff has not offered any persuasive argument allowing him to discover records of every sale Defendant made with respect to his art show. Plaintiff argues that postcards incorporating the subject photograph were used to promote the show. However, as explained above, Guetta testified that the postcards were actually given to people after viewing the show. Regardless, that one of between 30 to 60 postcards was used to promote an art show or that supposedly infringing works were displayed is insufficient to establish the necessary causal link for indirect damages purposes. Plaintiff cannot demonstrate that the sale of any of Defendant's art was as a result of any infringing conduct other than the sale of the supposedly infringing works. Any

argument that a person bought a work an artwork having nothing to do with Plaintiff's photograph because Defendant "promoted" his show with the postcard is entirely too speculative.

Accordingly, Plaintiff is not entitled to the broad discovery of private and irrelevant sales information called for by Request for Production No. 34.

Dated:  January 18, 2011	THE LINDE LAW FIRM


	By:	/s/ Erica L. Allen
	Douglas A. Linde
	Erica L. Allen
	Aren Kavcioglu
	Attorneys for Plaintiff
	GLEN E. FRIEDMAN

Dated: January 13, 2011	LAW OFFICES OF ALAN S. GUTMAN


	By:	/s/ John Juenger
	John Juenger
	Attorneys for Defendant and Counter-Claimant
	THIERRY GUETTA a/k/a MR. BRAINWASH