1  **DOUGLAS A. LINDE, ESQ. (SBN 217584)(dal@lindelaw.net)**
2  **ERICA ALLEN, ESQ. (SBN 234922)(ela@lindelaw.net)**
   **THE LINDE LAW FIRM**
3  **9000 Sunset Boulevard, Ste. 1025**
4  **Los Angeles, California  90069**
   **Telephone (310) 203-9333**
5  **Fax (310) 203-9233**
6
   Attorneys for Plaintiff GLEN E. FRIEDMAN
7
8                        UNITED STATES DISTRICT COURT
9                       CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| GLEN E. FRIEDMAN | Case No. CV10-0014 DDP (JCx) |
| | Honorable Dean D. Pregerson |
| Plaintiff, | Complaint Filed: January 4, 2010 |
| v. | **PLAINTIFFS MOTION FOR SUMMARY ADJUDICATION RE COPYRIGHT INFRINGEMENT; POINTS AND AUTHORITIES** |
| THIERRY GUETTA a/k/a MR. BRAINWASH; and DOES 1 though 10, inclusive, | |
| Defendants. | **Date:  May 9, 2011** |
| | **Time:  10:00 a.m.** |
| | **Place:  Courtroom 3** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on May 9, 2011 in Courtroom 3 of the United States District Court, Central District of California, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff Glen E. Friedman ("Friedman") will move the court pursuant to Federal Rule of Civil Procedure 56 for summary adjudication

that defendants have engaged in acts of copyright infringement and have done so willfully.

The motion will be made on the grounds that Plaintiff is entitled to summary adjudication of liability for copyright infringement as a matter of law because, after considering all evidence in the light most favorable to Defendants, no reasonable fact-finder could deny that Plaintiff owns the copyright in at issue in this case and that Defendants have engaged in unauthorized conduct that infringes Plaintiff's exclusive rights under the copyright.

The motion will be based on the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, and the Declarations of Glen E. Friedman and Douglas Linde filed with this motion, the papers and evidence on file in this case, and such further evidence and argument as may be presented at the hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 17, 2011.

Dated: April 4, 2011 THE LINDE LAW FIRM

By:__/s/ Douglas A. Linde_____
Douglas A. Linde
Erica L. Allen
Attorneys for Plaintiff Randy Friedman

# TABLE OF CONTENTS

**I. INTRODUCTION** ..................................................................................................1

**III. LEGAL ANALYSIS** ...........................................................................................6

   A.  Applicable Legal Standards .............................................................................6

      1. Requirements for Summary Judgment ........................................................6

      2. Requirements for Copyright Infringement ..................................................7

   B.  Plaintiff Owns A Valid Copyright In His Photograph ....................................9

      1. The Court Should Accord the Copyright Registration A Presumption Of Validity ............................................................................................................9

      2. There Is Independent Evidence Of Plaintiff's Copyright Ownership ..........10

   C.  Defendant Has Engaged In Copyright Infringement ....................................11

      1. Plaintiff Has Not Authorized Defendant's Conduct ..................................11

      1. Plaintiff Has Not Authorized Defendant's Conduct ..................................13

**IV. CONCLUSION** ..................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Addisu v. Fred Meyer, Inc.*, 198 F. 3d 1130, 1134 (9th Cir. 2000) ................................ 7
*American International Pictures, Inc. v. Foreman,* 576 F.2d 661, 664 (5th Cir. 1978). 13
*Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................................................................................................. 7
*Baxter v. MCA, Inc.,* 812 F.2d 421, 423 (9th Cir.1987) ................................................. 8
*Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985) ....................................................... 9
*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 5. Ct. 2505, 91 L. Ed. 2d 265 (1986) ......... 7
*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir.1997) ............................................................................................ 10
*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076-1077, (9th Cir. 2000) ................... 8
*Feist Publications, Inc., v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ............................................................... 7
*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548-549, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ................................................................................ 9
*Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) .................................................... 7
*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir.1984) ................................................... 9
*Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F.Supp.2d 375, 382 (S.D.N.Y., 2008) ................................................................................................. 10
*Microsoft Corp. v. Harmony Computers & Electronics, Inc.*, 846 F. Supp. 208 (E.D.N.Y. 1994) .................................................................................................. 13
*Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cit 1993) ....................................... 9
*North Coast Industries v. Maxwell*, 972 F.2d 1031, 1034 (9th Cir. 1992) ..................... 9
*Richter v. Instar Enterprises International*, *Inc.*, 594 F.Supp.2d 1000, 1011 (N.D. Ill. 2009) ................................................................................................................... 13
*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, fn. 3 (9th Cir. 1989) .................. 8, 12
*Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) ............................................ 8, 11
*Tarn v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997) ........................... 7
*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) .......................... 8
*Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F.Supp.2d 506, 515-516 (S.D.N.Y.2003) .................................................................................................. 10

**Statutes**

17 U.S.C. § 101 ........................................................................................................ 8
17 U.S.C. § 102 ........................................................................................................ 8
17 U.S.C. § 106 .................................................................................................. 8, 12

17 U.S.C. § 410(c) ...................................................................................................... 9
Federal Rule of Civil Procedure 56 ....................................................................... 6, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a straight-forward case of copyright infringement involving unauthorized creation and sale of posters that incorporate Plaintiff's original copyrighted photograph without authorization.

Plaintiff Glen E. Friedman ("Friedman") is a photographer noted for groundbreaking photographs of musical visionaries and cultural icons (http://en.wikipedia.org/wiki/Glen_E._Friedman). This case involves his original photograph of the famous rap group RUN-DMC.

Defendant Thierry Guetta ("Guetta") is an artist working under the moniker "Mr. Brainwash" whose "style" often involves use of the works of other artists for use in his own illustrations (http://en.wikipedia.org/wiki/Mr._Brainwash). He freely admits, as he must, that he "often incorporate[s] pre-existing images in creating my artworks (sic)." Declaration of Thierry Guetta ("Guetta Dec."),¶3, Docket No. 41. As will be apparent from the portions of his deposition cited herein, Mr. Guetta is a French national, who speaks broken English.

As set forth more fully below, the undisputed evidence shows that Plaintiff owns a valid, registered copyright in his photograph of RUN-DMC, that Defendant infringed Plaintiff's copyright by creating, reproducing, displaying and selling products incorporating the photograph with Plaintiff's authorization. As such Plaintiff seeks summary adjudication of copyright infringement. All that will be left for trial is whether the infringement was willful and resulting damages.

## II. STATEMENT OF FACTS

The following facts established in discovery show Plaintiff's copyright ownership and Defendant's infringement.

**The Photograph:** Glen Friedman took the following original photograph of

the famous rap group RUN-DMC (Uncontroverted Fact No. 1.) (the "Subject Photograph"):



Friedman was the sole author of the Subject Photograph, including selecting the Friedman was the sole author of the Subject Photograph, including selecting the subject matter, arranging the subjects, angle of photograph, lighting, composition, framing and determination of the precise time of taking the picture. (Uncontroverted Fact No. 2.)

The Subject Photograph was first published in 1994 in Plaintiff's book called "F*** YOU HEROES." This was the first public distribution of copies of the photograph. (Uncontroverted Fact No. 3 & 4.)

On March 23, 2003, Friedman applied for and received Copyright Registration Certificate VA 1-221-001 for the photographs contained in this book F*** YOU HEROES. (Uncontroverted Fact No. 4.)

In or around 2008, Defendant Guetta opened an exhibition of his works in Los Angeles, entitled "Life Is Beautiful." The exhibition was held at an abandoned space he rented, not a museum. See Exhibit 1, Deposition p. 167:24-168:5. Defendant's hope for this show was to sell his works. See Exhibit 1, Deposition p. 157:22-24.

Indeed, Defendant sold works at this "Life Is Beautiful" show with the money going to him.  See Exhibit 1, Deposition p. 157:25-158:2.  The show generated significant revenues for Guetta.  Defendant Guetta was ordered by Magistrate Judge Chooljian to produce all documents showing his revenues from this show, which are now in Plaintiff's possession.  [Order Granting In Part and Denying In Part Plaintiff's Motion, Docket No. 34] Out of respect for Defendant's financial affairs, Plaintiff has not filed these financial documents with the Court.  However, to the extent Defendant denies that he received ample revenues from this show, these documents may be filed.

Around the same time, Defendant used the Subject Photograph to create a series of derivative works which, by Defendant's own admission, incorporate the central figures and heart of Plaintiff's Subject Photograph.  See Exhibit 1, Deposition of Thierry Guetta, p. 48:7-14; 66:5-9, 66:18-22.

The first such derivative work is the "RUN-DMC Canvas" or "Banner Work" attached as Exhibit 7, Bates No. G-41.

Defendant admits, as he must, that the work "incorporate[es] the members of RUN-DMC from the Friedman Photograph." Guetta Declaration ¶16, Docket No. 41. Indeed, Defendant describes this as a "painting of Glen Friedman's RUN DMC photo."  See Exhibit 1, Deposition p. 88:17-19.  This work was displayed at Defendant's Los Angeles show as well as in his office.  See Exhibit 1, Deposition p. 85:8-86:13. This work was sold for $14,000.  See Exhibit 1, Deposition p. 122:10-123:11.  Additionally, this canvas was reproduced in a postcard which was used to advertise Defendant's "Life Is Beautiful" show.

Another such derivative work was the "Fluorescent Graffiti Stencil" or "Stencil Work" attached as Exhibit 13, Bates No. G-40.

Again, Defendant admits, as he must, that the work is based upon and incorporates Plaintiff's Subject photograph.  Guetta Declaration ¶14, Docket No. 41. This work was created using a stencil.  See Exhibit 1, Deposition p.38:1-25.   This

image was also displayed at Defendant's Los Angeles show. See Exhibit 1, Deposition p. 127:25-128:22. Defendant "does not recall" if it was offered for sale. See Exhibit 1, Deposition p. 157:13-17.

Defendant made two other stencil works, which he claims he did not offer for sale. Guetta Declaration ¶15, Docket No. 41.

Another such work was a reproduction of the Friedman Photo using broken records, called "Broken Records Work" Exhibit 5, Bates No. G-39.

Again, Defendant admits, as he must, that the "Broken Records Work" is based upon and incorporates Plaintiff's Subject Photograph. Guetta Declaration ¶12, Docket No. 41. This image was also displayed at Defendant's Los Angeles show. See Exhibit 1, Deposition p. 125:24-127:9. Defendant stated in his deposition that he does not recall if it was offered for sale. See Exhibit 1, Deposition p. 156:12-21. In connection with this Motion for Summary Judgment, Defendant has filed a declaration adamantly stating that it was "never offered for sale." Guetta Declaration ¶13, Docket No. 41.

Additionally, Guetta created a series of "silkscreens" of Friedman's photograph in which Defendant used images of two of the members of RUN DMC and pasted them onto an image of an old family using Photoshop, (See Exhibit 1, Deposition p. 65:7-13). This work which is attached as Exhibits 4 and 8, is alternatively called "RUN DMC Old Family" or "Old Photo Work." Defendant Guetta admits that he used Friedman's image as the basis for this image. Guetta Declaration ¶9, Docket No. 41. This work was displayed at the Los Angeles show. See Exhibit 1, Deposition p. 102:20-22. Additionally, this Old Family work was reproduced in a postcard which was used to advertise Defendant's "Life Is Beautiful" show.

Moreover, this Old Family silkscreen was advertised, offered for sale, and sold as a limited edition of 300 prints. See Exhibit 1, Deposition p. 102:20-22; 104:5-8. Defendant's website states that the limited edition of 300 is "Sold Out" but Defendant

testified that statement on his website is untrue, and that he has not sold 300 of these items. See Exhibit 1, Deposition p. 102:20-22; 104:5-8. Defendant believes that he only printed 150 of these works because "if I didn't sell it, I feel like a fool." See Exhibit 1, Deposition p. 105:22-106-24. Moreover, rather than serial number the items consecutively, such that the first item sold would be 1/300, the second item sold would be 2/300, and so on, Defendant testified he would give the works random serial numbers. See Exhibit 1, Deposition p. 106:22-24 ("I would make different confusing number to look - - to look - - look different."). Indeed, Defendant may have sold two prints bearing the same number. See Exhibit 1, Deposition p. 111:9-22 ("Q. How did you know that with respect to the Run DMC Old Family prints you didn't sell two prints with the same number? A. I don't know. It might still happen, an accident. Like I say, it's the beginning. It was the beginning, and I don't know. . . . Q. So as you sit here today, do you think it's possible that you could have sold two Run DMC Old Family prints with the same serial number? A. It could be possible. No problem. Accident happens.")

Plaintiff did not authorize Defendant's conduct in creating any of the above derivative works, (Uncontroverted Fact No. 10.)

Defendant repeatedly testified that his reasons for using Plaintiff's photograph were happenstance and its ready availability and that "I could have used any photo of any rap group taken by any photographer." See Exhibit 1, Deposition p. 71:25-72:24 (Q: So, as you sit here today, you wish you would've used a photograph of Run DMC taken by somebody else for your works, correct? A: Yeah, it could be Run DMC, it could be somebody else. It could be another artist or another thing, so, you know, it - - it doesn't matter."); p. 76:5-14 ("It could have been another image of Run DMC. It just happened to be that one. That's all."); p. 52:7-12 ("It could have done another photo of Run DMC or another photo of Run DMC, but it happened to be that one, you know. There was so many of them, just, you know, like you -- you choose, there is so

many, and it happened to be that one."). See also, p.70:5-21. Defendant Guetta "did not consider [Friedman's Photograph] to be particularly unique . . . To the contrary, I had seen numerous other photographs of the group that were substantially similar." Guetta Declaration ¶7, Docket No. 41.

Moreover, it was not even important to Defendant to feature the musical group Run DMC in his works. See Exhibit 1, Deposition p. 45:8-10 ("Its not like I love RUN DMC or I'm a fan of RUN DMC. It just happened, you know.") Indeed, the picture he used "could have been of any rap group." See Exhibit 1, Deposition p. 44:7-16. In making his work, Defendant was not trying to express an opinion. See Exhibit 1, Deposition p. 94:24-95:14.

Defendant Guetta knew that he did not take or own the Subject Photograph that he was using to make his derivative works. See Exhibit 1, Deposition p. 66:18-67:5. Nevertheless, he did not do anything to check the copyright as to the photograph or seek permission for its use. See Exhibit 1, Deposition p. 67:6-15.

## III. LEGAL ANALYSIS

This motion seeks summary adjudication that Plaintiff's photograph is an original work of authorship owned by Plaintiff; that Plaintiff duly registered the photograph with the Copyright Office; and that Defendant infringed Plaintiff's copyright by reproducing and publicly distributed posters containing unauthorized copies of Plaintiff's photograph.

### A. APPLICABLE LEGAL STANDARDS

#### 1. Requirements For Summary Judgment

Federal Rule of Civil Procedure 56(a) says "[a] party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." In that case, "[t]he judgment sought should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c).

A material fact is one that may affect the outcome of the case. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant bears the initial burden of presenting evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 5. Ct. 2505, 91 L. Ed. 2d 265 (1986). Once that occurs, the burden shifts to the opposing party to demonstrate a genuine issue of material fact for trial. "An opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FRCP 56(e). The opposing party must identify with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). A "scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of, material fact." *Addisu v. Fred Meyer, Inc.*, 198 F. 3d 1130, 1134 (9th Cir. 2000). Summary judgment must be granted if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Tarn v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997).

### 2. Requirements For Copyright Infringement

To succeed on a claim for copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc., v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Three*

...

*Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), *cert. denied*, 531 U.S. 1126, 121 S.Ct. 881, 148 L.Ed.2d 790 (2001).

**Valid Copyright**: "Copyright protection subsists … in original works of authorship fixed in a tangible medium of expression." 17 U.S.C. § 102(a). "Works of authorship" include "pictorial, graphical and sculptural works," 17 U.S.C. § 102(a)(5), which cover "photographs." 17 U.S.C. § 101. As *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076-1077 (9th Cir. 2000), said in upholding the copyright in a photograph of a bottle of vodka: "'[A]lmost any photograph may claim the necessary originality to support a copyright merely by virtue of the photographer's personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken.' … This circuit is among the majority of courts to have adopted this view, [that] creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable, [including] selection of subject, posture, background, lighting, and perhaps even perspective alone."

**Copying**: The owner of a copyright in a photograph has the exclusive right to do and authorize its: (i) reproduction; (ii) adaptation; (iii) public distribution; and (iv) public display. 17 U.S.C. § 106. "Copying" is shorthand for infringing any of these rights. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, fn. 3 (9th Cir. 1989).

"[P]laintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are substantially similar in idea and in expression of the idea." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). Moreover, the Ninth Circuit uses an "inverse ratio rule" which requires "a lower standard of proof of substantial similarity when a high degree of access is shown." *Three Boys Music, supra,* 212 F.3d at 485; *Baxter v. MCA, Inc.,* 812 F.2d 421, 423 (9th Cir.1987). For substantially similarity the Ninth Circuit uses an extrinsic/intrinsic test. "The 'extrinsic' test considers whether two works share a similarity of ideas and expression based on external, objective criteria [Citations] …

[and] the subjective 'intrinsic test' asks whether an 'ordinary, reasonable observer' would find a substantial similarity of expression of the shared idea." *Smith, supra,* 84 F.3d at 1218. "The extrinsic test is generally a question of law because it turns not on the responses of the trier of fact but on specific criteria which can be listed and analyzed." *North Coast Industries v. Maxwell*, 972 F.2d 1031, 1034 (9th Cir. 1992). Although the intrinsic test relies on evaluating total "look and feel," courts can grant summary judgment where no reasonable jury could decide otherwise under the intrinsic test. *Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985); *Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir.1984).

However, where, as here, the Defendant admits to copying, then there is direct evidence on the issue and no need to analyze access or substantial similarity. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548-549, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993) ("But here the substantial similarity analysis is inapposite to the copying issue because appellees admit that they in fact copied phrases from Norse's letters.") As will be shown below, this is one of those cases where Defendant admits to verbatim copying.

**B.** **PLAINTIFF OWNS A VALID COPYRIGHT IN HIS PHOTOGRAPH**

    **1.** <u>**The Court Should Accord Plaintiff's Copyright Registration A Presumption Of Validity**</u>

Section 410(c) of the Copyright Act provides: "In any judicial proceeding a certificate of copyright registration made before or within five years after first publication of the work constitutes *prima facie* evidence of the validity of the copyright and the facts stated in the certificate. The evidentiary weight accorded a certificate of registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c)(c).

Plaintiff's photograph was among the photographs that were the subject of

Copyright Registration Certificate VA 1-221-001. Although this certificate was issued in 2003, more than five years after publication of F*** YOU HEROS in 1994, a court in its discretion may still give a presumption of *prima facie* validity to the matters stated in the certificate where there is no credible evidence disputing the matters stated in the certificate. *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F.Supp.2d 375, 382 (S.D.N.Y., 2008) (certificates issued five years after photographs published considered prima facie valid where defendant "… has not offered any evidence tending to show that the certificates of registration provided by [Plainitff] are invalid … and there is considerable evidence (including the various license agreements, which are discussed below) demonstrating that plaintiff does indeed own the copyright in these photographs"); *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F.Supp.2d 506, 515-516 (S.D.N.Y.2003) (certificates of registration issued more than five years after works were first published are prima facie evidence of valid copyrights, because defendants did not come forward with any evidence that "would raise any question as to the validity of the copyrights covered by the registration certificates"). As will be shown in the next section, there is significant uncontroverted evidence supporting the validity of matters stated in the certificate.

If the court accords the certificate a *prima facie* presumption of validity, then this shifts the burden to the defendant to prove the invalidity of a plaintiff's copyright. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir.1997).

### 2.  There Is Independent Evidence Of Plaintiff's Copyright Ownership

There is independent evidence of Plaintiff's ownership of a valid and subsisting copyright in the Subject Photograph. In his Declaration, Glen Friedman states the following uncontroverted facts:

*Authorship*: Glen E. Friedman is the person who took the photograph and is the

sole and original author of the work.

*Originality*: The work is original with Glen Friedman. His is the person responsible for selection of subject, posture, background, lighting in the photograph.

*Publication*: The Subject Photograph was included in the photographs in the in the book F*** YOU HEROS and was first published with the publication of the book in September of 1994.

As such, there is independent uncontroverted evidence of the Plaintiff's ownership of a valid and subsisting copyright in the Subject Photograph consistent with the matters recited in the registration certificate. It is unlikely that copyright ownership is seriously contested.

## C. DEFENDANT HAS ENGAGED IN COPYRIGHT INFRINGEMENT

### 1. Defendant Has Admitted To Copying Of Plaintiff's Photograph

In order to establish unauthorized copying, a plaintiff typically shows access and substantial similarity. Such a showing is unnecessary here, because Defendant has admitted to direct access and exact copying of the Subject Photograph.

Defendant admitted to copying Plaintiff's photograph in making the following:

- "Run-DMC Canvas" or "Banner Work" Exhibit 7, Bates No. G-41. Copying admitted in Guetta Declaration ¶16, Docket No. 41; Exhibit 1, Deposition p. 88:17-19.
- "Fluorescent Graffiti stencil" or "Stencil Work", Exhibit 13, Bates No. G-40. Copying admitted in Guetta Declaration ¶14, Docket No. 41.
- "Broken Records Work". Exhibit 5, Bates No. G-39. Copying admitted in Guetta Declaration ¶12, Docket No. 41.
- "Run DMC Old Family" or "Old Photo Work." Exhibit 8. Copying admitted in Guetta Declaration ¶9, Docket No. 41; Exhibit 1, Deposition p. 65:7-13)

The evidence is simply undisputed that Defendant engaged in copying of Plaintiff's Subject Photograph in making his posters.

### 2. Defendant Violated Plaintiff's Exclusive Rights

The owner of a copyright in a photograph has the exclusive right to do and authorize its: (i) reproduction; (ii) adaptation (*i.e.*, create derivative works); (iii) public distribution; and (iv) public display. 17 U.S.C. § 106. "Copying" is shorthand for infringing any of these rights. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, fn. 3 (9th Cir. 1989). Here, Defendant violated Plaintiff's exclusive rights by, without authorization, reproducing, adapting, publicly distributing and publicly displaying works bearing copies of Plaintiff's Subject Photograph, including as follows:

"RUN-DMC Canvas" or "Banner Work," Exhibit 7, Bates No. G-41. This work was displayed at Defendant's Los Angeles show as well as in his office. See Exhibit 1, Deposition p. 85:8-86:13. This work was sold for $14,000. See Exhibit 1, Deposition p. 122:10-123:11. Additionally, this canvas was reproduced in a postcard which was used to advertise Defendant's "Life Is Beautiful" show.

"Fluorescent Graffiti Stencil" or "Stencil Work," Exhibit 13, Bates No. G-40. This image was also displayed at Defendant's Los Angeles show. See Exhibit 1, Deposition p. 127:25-128:22. Defendant "does not recall" if it was offered for sale. See Exhibit 1, Deposition p. 157:13-17.

"Broken Records Work," Exhibit 5, Bates No. G-39. This image was also displayed at Defendant's Los Angeles show. See Exhibit 1, Deposition p. 125:24-127:9. Defendant stated in his deposition that he does not recall if it was offered for sale. See Exhibit 1, Deposition p. 156:12-21.

"Run DMC Old Family" or "Old Photo Work." This work was displayed at the Los Angeles show. See Exhibit 1, Deposition p. 102:20-22. Moreover, this "Run DMC Old Family" silkscreen was advertised, offered for sale, and sold as a limited

edition of 300 print. See Exhibit 1, Deposition p. 102:20-22; 104:5-8. Additionally, this Old Family work was reproduced in a postcard which was used to advertise Defendant's "Life Is Beautiful" show.

Each of these uses is an infringing use.

### 3. Plaintiff Has Not Authorized Defendant's Conduct

Direct copyright infringement is a strict liability tort. Lack of knowledge does not limit liability but only effects the calculation of damages. *Richter v. Instar Enterprises International, Inc.*, 594 F.Supp.2d 1000, 1011 (N.D. Ill. 2009). "[B]ecause copyright law favors the rights of the copyright holder, the person claiming authority to copy or vend generally must show that his authority to do so flows from the copyright holder." *American International Pictures, Inc. v. Foreman*, 576 F.2d 661, 664 (5th Cir. 1978). To survive a motion for summary judgment, a defendant has "the burden of tracing the chain of title to show that [its] authority … flows from the copyright holder." *Microsoft Corp. v. Harmony Computers & Electronics, Inc.*, 846 F. Supp. 208 (E.D.N.Y. 1994). Defendant cannot meet this burden because it has no such authority.

In this case, Plaintiff did not authorize Defendant to utilize his Subject Photograph. (Uncontroverted Facts No. 10.) Indeed, in his deposition Defendant admitted that he knew he did not own the Subject Photograph but he never contacted anyone to obtain permission to use it. Exhibit 1, Guetta Deposition, p. 66:24-67:20.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests summary adjudication as to these issues of copyright infringement.

Dated:  April 4, 2011                    THE LINDE LAW FIRM

By:__/s/ Douglas A. Linde_____
Douglas A. Linde
Erica L. Allen
Attorneys for Plaintiff Glen E. Friedman