O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN E. FRIEDMAN, ) | Case No. CV 10-00014 DDP (JCx) |
| ) | |
| Plaintiff, ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. ) | |
| ) | |
| THIERRY GUETTA a/k/a MR. BRAINWASH, ) | [Motions filed on April 4, 2011] |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Glen E. Friedman ("Plaintiff") alleges that Defendant Thierry Guetta a.k.a Mr. Brainwash ("Defendant") infringed Plaintiff's copyright by creating, reproducing, displaying, and selling products incorporating Plaintiff's photograph of the hip hop music group Run-DMC (the "Photograph"). Plaintiff and Defendant filed cross motions for summary judgment. After reviewing the papers submitted by the parties, considering the arguments therein, and hearing oral arguments, the court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

## I. Background

In 1985 Plaintiff took a picture of the famous hip hop music group Run-DMC. (Compl. ¶ 12; Def.'s Statement of Uncontroverted Facts {"SUF") ¶ 58.) The Photograph depicts the three artists standing shoulder-to-shoulder and wearing black stetson hats. (See Declaration of Guetta ("Guetta Dec."), Ex. B.) In 1994, Plaintiff published the Photograph in the book Fuck You Heroes. (Declaration of Friedman ("Friedman Dec.") ¶ 3.) In 2003, Plaintiff applied for and was issued Copyright Registration Certificate VA 1-221-001 for the Photograph. (Friedman Dec. ¶ 3.)

Defendant obtained the Photograph from the internet. (Guetta Dec. ¶ 7.) Defendant did not specifically seek out the Photograph or a portrait of Run-DMC, but rather, came across the Photograph by chance. (Id. ¶ 7.) No indication of a copyright existed on the Photograph, and Defendant was not aware that the Photograph was published in Plaintiff's book. (Id.) Defendant, an artist, often incorporates pre-existing images in the creation of his artwork. (Guetta De. ¶¶ 2-4.) For purposes of the present action, it is undisputed that Defendant created at least four categories of works that he admits "incorporat[ed] aspects" of the Photograph. (Guetta Dec. ¶¶ 6, 9, 12, 14.)

1. The "Old Photo" work was made by combining a scanned photograph of a 19th century couple with images of two of the members of Run-DMC. (Id. ¶ 9.) The Run-DMC portion of the photo came "from the digital image of the Photograph." (Id.) The Old Photo Work was printed as a 22" by 30" image, and Defendant sold multiple prints of this piece. (Id. ¶ 10.) Defendant also used

reproductions of the Old Photo Work image on free postcards handed out to attendees of his 2008 Life is Beautiful show. (Id. ¶ 11.)

    2.  To create the "Broken Records" work, Defendant altered a digital image of the Photograph. The altered image eliminated the Photograph's background but left in place the outline of the Run-DMC trio. (Id. ¶ 12.) Defendant then projected this altered image onto a large piece of wood, painted on the wood, and glued 1,000 pieces of phonograph records onto the wood. (Id.) Defendant only produced one copy of this piece. The Broken Records work was displaying at the Life is Beautiful installation in Los Angeles and was never offered for sale. (Id. ¶¶ 12-13.)

    3.  To create the "Stencil" works, Defendant states that he "altered" "a digital image of the Photograph . . . so that it could be made into a one piece stencil . . . ." (Id. ¶ 14.) Defendant then "placed the stencil on top of [] three canvases with different backgrounds and used black spray paint to superimpose the image of Run-DMC." (Id.) One of the Stencil Works was put on public display and none of them were offered for sale. (Id. ¶¶ 14-15.)

    4.  The "Banner Work" was made by hand-painting a projected altered reproduction the Photograph onto a canvas. (Id. ¶ 16, Ex. J.) The Banner Work was sold prior to the Life is Beautiful show, but it was displayed at the show and during a three-day music festival in 2008 in New York. (Id. ¶ 16.) The Banner Work was also reproduced on postcards handed to attendees upon leaving the Life is Beautiful show. (Id.)

  On January 4, 2010, Plaintiff filed suit in federal court alleging infringement by the Old Photo, Broken Records, Stencil, and Banner works (collectively the "Four works") of Plaintiff's

copyright of the Photograph. On April 4, 2011, Plaintiff and Defendant filed cross motions for summary judgment.

**II. Legal Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 259. Instead, the non-moving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325. The "mere existence of a scintilla of evidence" in support of the non-moving party's claim is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252.

**III. Discussion**

Plaintiff alleges that Defendant infringed his copyright for the Photograph in violation of 17 U.S.C. § 101 et seq. Defendant argues that Plaintiff cannot establish copyright infringement of the Photograph because there is no substantial similarity between the Photograph and the allegedly infringing uses. Alternatively, Defendant argues that his use of the Photograph was fair use pursuant to 17 U.S.C. § 107.

**A.   Originality and Substantial Similarity**

It is undisputed that Plaintiff holds the copyright for the Photograph, and it well established that photographs are entitled to copyright protection. See Burrow-Giles Lithographing Co., 111 U.S. 53 (1884) (upholding the copyright of a photograph of Oscar Wilde). As a general rule, the copyright owner of a photograph holds the exclusive rights to reproduce, adapt (i.e. create derivative works), publicly distribute, and publicly display the work. See 17 U.S.C. § 106.

Here, Defendant admits that he obtained the Photograph on the internet and used a digital copy of that image in the creation of the Old Photo, Broken Records, Stencil, and Banner works. However, Defendant argues that the elements of the Photograph that he copied were not original. For example, Defendant argues that the Run-DMC's pose, depicted in the Photograph, such as the "B-Boy Stance" and the subjects' "stern countenances" were already in the public domain and unoriginal. Defendant further argues that "[t]here are many photographs of Run-DMC from the 1980's that are similar to [Plaintiff's] Photograph, including the style of clothing, pose, demeanor and background [exhibited in the Photograph]," thereby

5

making those elements of the Photograph unoriginal or, to use Defendant's term, "unprotectable." (Def.'s Motion 7:17-20; 9:13.) The court disagrees.

The protectable elements of a photograph generally include "selection of subject, posture, background, lighting, and perhaps even perspective alone." Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1076-77 (9th Cir. 2000). In Burrow-Giles, the Supreme Court considered whether the defendant had infringed plaintiff's copyright of a photograph he took of Oscar Wilde. 111 U.S. at 54. In that case, the defendant argued that the photograph "involve[d] no originality of thought or any novelty," because it was it was the "mere mechanical reproduction of the physical features or outlines of some object." Id. at 59. The Court disagreed, explaining that where a photographer so contrives a photograph by "posing [the subject] in front of the camera, selecting and arranging the costume, . . . arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, suggesting and evoking the desired expression," the work is a "original mental conception" and entitled to the benefit of copyright protection. Id. at 55.

Here, it is undisputed that Plaintiff selected and arranged the subjects. Although the court believes that no more is required, the court also notes that Plaintiff made related decisions about light and shadow, image clarity, depth of field, spatial relationships, and graininess that were all represented in the copyrighted Photograph. Plaintiff also selected the background and perspective of the Photograph, and all of these particular artistic decisions commutatively result in the Photograph. With

6

respect to Defendant's argument that Plaintiff's selected pose and arrangement of Run-DMC was common, the court is not persuaded. To qualify for copyright protection, a work must be "original" to the author, which means only that the work was independently created by the author and that it possesses at least some minimal degree of creativity. Feist Publications Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345 (1991). "[T]he requisite level of creativity [required to constitute an original work] is extremely low; even a slight amount will suffice." Id. "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." Id. Plaintiff's work is original.

Having concluded that Plaintiff's work is original and, therefore, entitled to the benefit of copyright protection, the court next considers Plaintiff's claim that Defendant has infringed Plaintiff's related copyrights. To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant. Narell, 872 F.2d at 910. Because direct copying is difficult to prove, a plaintiff can satisfy the second element by demonstrating that (a) the defendant had access to the allegedly infringed work and (b) the two works are substantially similar in both idea and expression of that idea. Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991).

Because it is undisputed that Plaintiff owns the rights to the Photograph, the court proceeds to addresses the second prong of copyright infringement test, i.e. access and substantial similarity. The Ninth Circuit has expressed disfavor for summary

judgment on questions of substantial similarity, but explained that "it is nevertheless appropriate to grant summary judgment if, considering the evidence and drawing all inferences from it in the light most favorable to the nonmoving party, no reasonable jury could find that the works are substantially similar in idea and expression." Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991). Having considered the Defendant's admission that he directly altered a digital copy of the Photograph and the striking similarity of the four works with the Photograph, the court concludes that no reasonable fact finder could find that the works are not substantially similar, and therefore Plaintiff is entitled to summary judgment.

"Proof of access requires an opportunity to view or to copy plaintiff's work." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000) (internal quotation omitted). "Opportunity" has been defined as a "reasonable" possibility that Defendants viewed Plaintiff's Design. Jason v. Fonda, 526 F. Supp. 774, 776-77 (C.D. Cal. 1981). Because Defendant has admitted access to the Photograph, (Guetta Dec. ¶ 7.), the court proceeds to consider whether the Photograph and the Four works are substantially similar in both idea and expression of that idea.

To determine whether two works are substantially similar, the Ninth Circuit employs a two-part analysis — an extrinsic and an intrinsic test. The "extrinsic test" is an objective comparison of specific expressive elements. Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). The "intrinsic test" is a subjective comparison that focuses on "whether the ordinary, reasonable audience" would find the works substantially similar in

the "total concept and feel of the works." Kouf v. Walt Disney Pictures & Televison, 16 F.3d 1042, 1045 (9th Cir. 1994). In applying the two-part test, the court "inquire[s] only whether 'the protectable elements, standing alone, are substantially similar' and "filter[s] out and disregard[s] the non-protectable elements." Cavalier, 297 F.3d at 822.

Here, the Four works plainly borrow original elements of Plaintiff's Photograph, including, for example, the following: the selection of the Run-DMC subjects, the arrangement of the three subjects, the poses of the individual subjects, the subjects' accessories and outfits, the lighting, and the perspective. See, e.g., Los Angeles News Service v. Tullo, 973 F.2d 791, 794 (9th Cir. 1992) (considering selection of subject, posture, background, lighting, and perspective to be creative decisions that are protectible elements of a photographer's work). In the present action, Defendant removed the background and change the coloring in the Four works. These minor changes, however, do not alter the fact that the distinct figures in Plaintiff's Photograph remain clearly visible and readily identifiable. In fact, the outline of each figure is almost exactly replicated in the Broken Records, Stencil, and Banner works. Even in the Old Photo Work, in which two of the figures from the Photograph appear alongside two characters from a different photograph, the two members of Run-DMC depicted are exact replications of the Photograph.

Our language is rich with words that attempt to communicate the many feelings and thoughts that make us human. We also use facial expressions, actions, and body language to convey meaning. A particular countenance might express happiness, interest,

boredom, fear, or some combination of the almost limitless expressions that make up our unspoken language. Copyright law recognizes that any spark of originality of expression is protected. The extrinsic test lends itself well to the objective comparison, inter alia, of designs or patterns. However, when the issue is whether the acknowledged appropriation of a photograph of a person or persons coupled with modifications by a defendant constitutes substantial similarity, this court is of the mind that as long as the essence of the expressions of the subject or subjects is copied, there will almost always be substantial similarity. A photograph of a person captures a person's expression in a particular instant of time, and will almost always possess the requisite level of creativity to warrant protection.

    In sum, because the composition of the Run-DMC figures in the Photograph is a result of Plaintiff's originality, the Photograph and its related elements are each protected. Here, Defendant admits that the Four works were created by making small alterations to a digital copy of the Photograph, and the court concludes that the Four works are substantially similar to the Photograph. Because Defendant has copied Plaintiff's Photograph without authorization, Plaintiff is entitled to summary judgment in his favor.

    **B.   Fair Access**

    Defendant argues that even if the Four works are substantially similar to the Photograph, Defendant's use of the Photograph was fair under the fair use doctrine and therefore protected.

    The fair use doctrine confers a privilege on people other than the copyright owner "to use the copyrighted material in a

reasonable manner without the consent of the copyright owner." <u>Los Angeles News Service v. Tullo</u>, 973 F.2d 791, 796 (9th Cir. 1992) (internal quotation marks and citation omitted). The Copyright Act explains that the "fair use" of a copyrighted work is intended "for purposes such as criticism, comment, news, reporting, teaching . . ., scholarship, or research . . . ." 17 U.S.C. § 107.

In determining whether a use is fair, courts engage in a case-by-case analysis and a flexible balancing of the following four non-exclusive factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. <u>Mattel</u>, 353 F.3d at 800 (citing 17 U.S.C. § 107). Because fair use is an affirmative defense, Defendant carries the burden of demonstrating it. <u>Campell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 590 (1994). The court considers each factor in turn and then together and concludes that Defendant cannot satisfy its burden here.

1. Purpose and character of use

The "purpose and character of use" factor in the fair use inquiry asks "to what extent the new work is 'transformative'" and does not simply "supplant[]" the original work and whether the work's purpose was for- or not-for-profit. <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 579 (1994). In considering whether a work is transformative, the court asks whether there was "real, substantial condensation of materials and intellectual labor and

11

judgment bestowed thereon," "merely facile use of the scissors [] or extracts of the essential parts constituting the chief value of the original work," do not constitute a fair use. <u>Worldwide Church of God v. Philadelphia Church of God, Inc.</u>, 227 F.3d 1110, 1117 (9th Cir. 2000). "[U]se for the same intrinsic purpose as the copyright holder's . . . seriously weakens a claimed fair use." <u>Id.</u> at 1117.

Here, Defendant has not offered a transformative alternative use of the Photograph image. Both Plaintiff and Defendant are artists, and the image was used by both in works of visual art for public display. Although the statements made by those respective artworks and the mediums by which those respective statements were made differ, the use itself is not so distinct as to render Defendant's use a transformation of Plaintiff's copyright. Furthermore, Defendant admits that the Old Photo work was offered for sale and sold. Similarly, the Banner work was sold and publicly displayed at the Life is Beautiful show. The other two works were also on display at the Life is Beautiful show, which Defendant does not dispute was a venue where Defendant had his artwork for sale. The court is not pursuaded that Defendant's use of the Four works was of a distinct character and the court finds it significant that all of the works were on display at a show where Defendant exhibited and sold his artwork and where Defendant sold two of the works.

2. Nature of the copyrighted work

The second factor in the fair use analysis "recognizes that creative works are closer to the core of intended copyright protection than informational and functional works." <u>Dr. Seuss</u>

Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1402 (internal quotation omitted). "[P]hotographs taken for aesthetic purposes, are creative in nature and thus fit squrely within the core of copyright protection." Elvis Presly Enterprises, Inc. v. Passport Video, 349 F.3d 622, 629 (9th Cir. 2003). Although this factor "typically has not been terribly significant in the overall fair use balancing," here it weights against a defense of Defendant's use. Dr. Seuss, 109 F.3d at 1402.

### 3. Amount and substantiality of the portion used

The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." Campbell, 510 U.S. at 586. In this case, the degree to which Defendant borrowed elements from Plaintiff's Photograph was both quantitatively and qualitatively substantial. Defendant downloaded an exact digital copy of the Photograph and used substantial portions of that photograph, including the three individuals' faces. In the Banner work, for example, Defendant did little more than eliminate the background. The Run-DMC individuals are readily identifiable in each of the Four works, and in each of the Four works the figures are making precisely the same pose and wearing the same exact stetson hats and large jackets that they are in the Photograph. Furthermore, in all of the works except the Old Photo, the three figures are making the same facial expressions as they are in the Photograph. Defendant took a substantial portion of the Photograph in order to create each of the Four works, and the portion Defendant took was at the heart of the Photograph.

### 4. Effect of the use upon potential market

1   The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  In considering this factor, the court looks to both the extent of the market harm caused by showing and selling the Defendant's artwork and whether widespread use would hurt the potential market for the Photograph.  Here, Plaintiff has previously used the Photograph for commercial use, namely by publishing it in the book <u>Fuck You Heroes</u> and by selling it to collectors.  (<u>See</u> Friedman Dep., Dkt. No. 53, Ex. 3 120:19-121:23.) Accordingly, Plaintiff's commercial and artistic use of the Photograph competes directly with Defendant's use.  Defendant cannot appropriate this market by making works that infringe Plaintiff's copyright.

   In sum, the court concludes that Defendant cannot meet his burden of establishing a fair use of Plaintiff's Photograph.  To permit one artist the right to use without consequence the original creative and copyrighted work of another artist simply because that artist wished to create an alternate work would eviscerate any protection by the Copyright Act.  Without such protection, artists would lack the ability to control the reproduction and public display of their work and, by extension, to justly benefit from their original creative work.

///
///
///

**V.  Conclusion**

   For the reasons stated above, the court DENIES Defendant's Motion for Summary Judgment and GRANTS Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: May 27, 2011

DEAN D. PREGERSON
United States District Judge